AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### District of New Mexico  ▼

| | |
|---|---|
| United States of America<br>v.<br>**Jay Mills Graham**<br>**(YOB 1965)** | )<br>)<br>)<br>)   Case No.   24-MJ-1240<br>)<br>)<br>) |
| _____<br>*Defendant(s)* | |

**FILED**
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ in the county of ___San Juan___ in the
_____ District of ___New Mexico___ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| a. 21 U.S.C. § 841(b)(1)(A)(viii) | Possession with intent to manufacture, distribute, or dispense over 500 grams of a mixture and substance containing a detectable amount of methamphetamine. |
| b. 21 U.S.C. § 846 | Conspiracy to manufacture, distribute or dispense a controlled substance. |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

**BIA Special Agent Lyle Benally**
*Printed name and title*

Telephonically sworn and electronically signed.

Date:  ___8/26/24___

_____
*Judge's signature*

City and state:   ___Albuquerque, NM___

B. Paul Briones, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA

VS

Case No. ___24-MJ-1240___

Jay Mills Graham
Year of birth: 1965

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

I, Lyle H. Benally, being duly sworn, hereby depose and state as follows:

### Introduction and Agent Background

1.      Your Affiant has been a Special Agent (SA) with the Bureau of Indian Affairs (BIA), United States Department of the Interior for the past 8 years, and a Task Force Officer with the Federal Bureau of Investigation, currently assigned to the Division of Drug Enforcement, and as such, is an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 and Title 21, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations and make arrests for offenses enumerated in Title 18 and Title 21 of the United States Code.

2.      Your Affiant has been employed as a law enforcement officer for over 14 years.  In the course of his official duties, he is charged with the investigation of crimes within the District of New Mexico.

3.      The facts and circumstances detailed in this affidavit have been derived from an investigation conducted by Affiant as well as members of the Region II Narcotics Task Force and/or communicated to me by other law enforcement officers as well as witnesses.

4.      This affidavit is in support of criminal charges against subject Jay Mills Graham (hereinafter "Graham").  This affidavit does not contain all items known to me but is merely used

to establish sufficient probable cause for the issuance of a warrant for the arrest of Graham for crime occurring within the District of New Mexico.

## Relevant Statutes

5.     This affidavit supports probable cause of the violation of the following statutes:

a.     21 U.S.C. § 841(b)(1)(A)(viii) – the manufacture, distribution, or dispensing, or possession with intent to manufacture, distribute, or dispense over 500 grams of a mixture and substance containing a detectable amount of methamphetamine; and

b.     21 U.S.C. § 846 – conspiracy to manufacture, distribute or dispense a controlled substance.

## Probable Cause

6.     In July of 2024, Region II Narcotics Task Force Agent Michael Nelson (hereinafter "Agent Nelson") began an investigation into Jay Mills Graham (hereinafter "Graham") for trafficking distribution amounts of methamphetamine in the District of New Mexico, in the County of San Juan and the surrounding communities.

7.     Agent Nelson learned that Graham travels to Phoenix, Arizona, where he purchases illicit drugs and transports the drugs back to San Juan County in the District of New Mexico.

8.     On August 15, 2024, Agent Nelson conducted a controlled purchase of Methamphetamine from Graham in Farmington, New Mexico. Agent Brandt Warman (hereinafter "Agent Warman") served as an Undercover (UC) for this controlled purchase and is a certified Law Enforcement Officer (LEO) in the State of New Mexico. Agent Warman has been a certified Officer for approximately twelve (12) years and has extensive training in narcotics investigations with the Region II Narcotics Task Force (NTF).

9.     Agent Nelson provided Agent Warman with Region II Contingency Funds, which were used for all expenses incurred during the operation. Agent Warman was given three thousand, two

hundred dollars to purchase two pounds of methamphetamine from Graham. Agent Warman, in an undercover capacity traveled to the buy location, which was 39 road 5568, Farmington, NM, and met with Graham.

      a.  Agent Warman and Graham spoke briefly before Graham asked for the buy funds.

      b.  Graham told Agent Warman to give him the money, then follow him to a different location where the transaction would be completed. Agent Warman agreed to this arrangement and gave a backpack containing $3,200 to Graham.

      c.  Agent Warman and Graham then drove to a Speedway gas station located at 5702 US-64, Farmington, NM, which was near the initial meeting location. They arrived at this location, Agent Warman approached Graham's vehicle and Graham handed Agent Warman the backpack which now contained methamphetamine.

      d.  Graham and Agent Warman spoke briefly about a future purchase of five pounds of methamphetamine, and Graham spoke to Agent Warman about the quality of the methamphetamine.

10.    Agent Warman took the methamphetamine, returned to his vehicle and drove to a safe location to meet with Agent Nelson. Agent Warman was debriefed about the transaction. While debriefing, Agent Warman advised Agent Nelson Graham would be traveling to Phoenix, Arizona, the following week to pick up more methamphetamine.

11.    The methamphetamine that Agent Warman purchased from Graham was transported to the Region II office and tested with a Thermo Scientific TruNarc, which is a handheld analyzer which provides rapid narcotics detection and identification. The TruNarc analyzer showed the presence of methamphetamine. The methamphetamine was weighed and had a gross weight of 924 grams. It was then photographed and entered into evidence.

12.    On August 22,2024, Graham met Agent Warman at IHOP (3546, Farmington, NM), to discuss Graham's upcoming travels. Agent Warman confirmed that Graham would be making a trip to Phoenix, and Agent Warman provided Graham four thousand dollars utilizing Region II Contingency Funds for the purchase of five pounds of methamphetamine. Graham advised that the total amount for the five pounds of methamphetamine would be eight thousand dollars. Agent Warman advised Graham that the rest of the money would be wired to him in Phoenix, Arizona.

13.    The District Court in Farmington New Mexico had previously authorized a warrant for the placement of a GPS Tracking Device on Grahams vehicle.  While Agent Warman was meeting with Graham inside the IHOP, Region II Agents deployed a GPS Tracking Device on Graham's vehicle (Black 2024 Dodge TRX, bearing Arizona license plate 60ABC9A).

14.    In the evening of August 22, 2024, Agent Warman contacted Graham and learned that he had not left for Phoenix, Arizona. Graham stated that he would be leaving the next day, in the morning hours. Graham advised Agent Warman to not wire transfer the remaining owed money and to meet with him in person. Agent Warman agreed, and a meeting location was agreed upon.

15.    Region II Agents met with Special Agent L. Benally, to discuss the future transaction with J. Graham. Confidential Advance Funds were utilized from the Bureau of Indian Affairs for two thousand, eight hundred dollars. One thousand, two hundred dollars of Region II Contingency Funds were prepared for the money fronted, totaling four thousand dollars.

16.    Agent Warman met with Graham at Twice the Ice in Flora Vista, NM. Agent Warman provided Graham with an additional four thousand dollar at that time.  While speaking with Graham, he learned that Graham intended to pick up approximately fifteen pounds of methamphetamine while in Phoenix, Arizona. Graham then showed Agent Warman the large quantity of money that he had inside his vehicle. Graham told Agent Warman that he would be returning from Phoenix, Arizona, on August 24, 2024.

17.     On August 23, 2024, Agent Nelson, was granted an arrest warrant for Graham for Trafficking a Controlled Substance through the Farmington Magistrate Court.

18.     On August 24, 2024, Agent Nelson was also granted a search warrant for Grahams vehicle through the Farmington District Court with a nighttime exception.

19.     On August 24, 2024, Graham contacted Agent Warman and advised that he was leaving Phoenix, Arizona, and traveling back to San Juan County, NM. A meeting location was set between J. Graham and Agent Warman at the Sunray Casino located at 39 road 5568, Farmington, NM.

20.     Agents with the Region II NTF, BIA Special Agent L. Benally, Farmington Police Officers and San Juan County Sheriff's Office Deputies briefed at the Farmington Police Department regarding the arrest and seizure of Graham and his vehicle. Region II Agents monitored Graham's location utilizing the GPS Tracking Device and observed that he was Northbound toward Farmington, NM. Agents observed Graham turn off I-40 and head northbound on NM 371. Law Enforcement personnel headed to their designated locations waiting for Graham to arrive at the meet location.

21.     As Graham entered the city limits of Farmington, NM, he contacted Agent Warman and changed the meeting location to the Bisti Speedway located at 1020 Bisti Hwy, Farmington, NM. Agent Warman agreed to the new meeting location, and all involved Law Enforcement personnel relocated to the Bisti Speedway.

22.     Once Agent Warman arrived, he contacted J. Graham on the passenger side of his vehicle. Region II Agents observed the transaction taking place and conducted a takedown by apprehending both Graham and Agent Warman. Both Graham and Agent Warman were placed in handcuffs and searched incident to arrest before being placed in the back seat of law enforcement vehicles. Graham and Agent Warman were transported to the Farmington Police Station.

23.     Agent Nelson observed a plastic bag laying on the ground near the rear passenger door of J. Graham's vehicle. Inside the bag Agent Nelson saw four tin foil wrapped packages that were consistent with narcotics distribution. Agent Nelson picked up the plastic bag with the packages inside and placed it in the rear passenger seat of Graham's vehicle. Agent Nelson sealed Graham's vehicle utilizing evidence tape and the vehicle was towed and transported to the Farmington Police Department awaiting the execution of the previously granted search warrant.

24.     Agent Nelson and Region II Director N. Babadi conducted an interview with J. Graham. During the interview J. Graham was read his Miranda Rights where he acknowledged that he understood and agreed to speak to law enforcement.

25.     Graham told the Region II Agents that they would find fifteen pounds of methamphetamine in his vehicle, and that he had an AR-15 rifle under the truck's seat. Graham also provided Agent Nelson with the phone number of his narcotics dealer in Phoenix, Arizona.

26.     At the conclusion of the search of Graham's vehicle methamphetamine with a gross weight of 16.18 pounds (7339 grams) was located along with two firearms. One AR-15 carbine and one .410 shotgun.

27.     The methamphetamine was tested with a TruNarc analyzer which detected the presence of methamphetamine. The methamphetamine was then photographed and entered into evidence.

## Conclusion

28.     Based on the facts presented in this affidavit, I have probable cause to believe and do believe that Graham knowingly and willingly possessed over 500 grams of a mixture and substance containing a detectable amount of methamphetamine with the intent to distribute the same, in violation of 21 U.S.C. § 841(b)(1)(A)(viii) and 21 U.S.C. § 846.    above facts, Your Affiant believes there is probable cause to believe Jay Mills Graham is in violation of 21 U.S.C. §§

841(b)(1)(A)(viii) and 846. Assistant United States Attorney Robert James Booth II has reviewed this complaint.

Respectfully Submitted,

Lyle Benally, Special Agent
Bureau of Indian Affairs

Subscribed and sworn telephonically
Before me this 26th day of August 2024.

The Honorable B. Paul Briones
United States Magistrate Judge